WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Employers Mutual Casualty Company,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>B5 Incorporated, et al.,<br><br>　　　　　　Defendants. | No. CV-14-01490-PHX-ESW<br><br>**ORDER** |

    Pending before the Court is Plaintiff's Motion for Partial Summary Judgment Regarding Collateral Security (Doc. 45) involving Plaintiff's first and third claims for relief.  Oral argument has been requested.  However, the Court deems oral argument unnecessary to a determination of the issues presented.  The request for oral argument is denied.  The Federal Court has jurisdiction pursuant to 28 U.S.C. § 1332.  The parties have consented to proceeding before a Magistrate Judge (Doc. 39) pursuant to Rule 73, Fed. R. Civ. P. and 28 U.S.C. § 636(c).

    After reviewing the parties' submissions, the Court finds that genuine issues of material fact exist, and Plaintiff is not entitled to summary judgment on Counts I and III as a matter of law.  Plaintiff's Motion for Partial Summary Judgment will be denied for the reasons set forth herein.

## I. PROCEDURAL HISTORY

Plaintiff filed a Complaint (Doc. 1) in Federal Court on July 1, 2014. Defendants filed an Answer (Doc. 28) on December 19, 2014. Plaintiff filed a "Motion for Partial Summary Judgment" (Doc. 45), "Statement of Facts in Support of Motion for Partial Summary Judgment" (Doc. 46), and "Declaration of Ryan Springer in Support of Motion for Partial Summary Judgment" (Doc. 47) on April 28, 2015. Defendants filed their "Response to Motion for Summary Judgment" (Doc. 60), "Statement of Facts in Support of Response to Motion for Summary Judgment" (Doc. 61), and "Declaration of Chris J. Brown" (Docs. 62-64) on June 19, 2015 with exhibits separately attached as Exhibit A (Doc. 62), Exhibit B (Doc. 63) and Exhibits C through F (Doc. 64). Plaintiff filed a "Reply in Support of Motion for Partial Summary Judgment" (Doc. 65) on July 13, 2015.

Plaintiff seeks summary judgment on Counts I and III of the Complaint. Plaintiff alleges in Count I that Defendants breached their duty to indemnify Plaintiff, and Plaintiff seeks indemnification "in an amount to be proven at trial but in no event less than initial pay outs made by EMC in the amount of $344,854.29" (Doc. 1 at 7-8). Plaintiff alleges in Count III that Defendants failed to post collateral when demanded, as per the indemnity agreement, and Plaintiff seeks specific performance of the collateral security provision. (*Id.* at 10).

In response to Plaintiff's Motion for Partial Summary Judgment on Counts I and III, Defendants allege that Plaintiff violated the implied covenant of good faith and fair dealing. Therefore, Defendants assert that Plaintiff is not entitled to indemnification or specific performance of the collateral security provision.

## II. FACTS

Plaintiff Employers Mutual Casualty Company ("EMC") is an Iowa corporation with its principal place of business located in Des Moines, Iowa. Defendant B5 Incorporated d/b/a Spectrum Construction ("B5") is an Arizona corporation with its principal place of business located in Tempe, Arizona. Defendant Chris J. Brown is the President of B5. Shelley Brown is Mr. Brown's wife.

Plaintiff EMC is a surety in the business of issuing surety bonds on behalf of contractors. Defendant B5 is a private contractor. EMC issued a performance bond ("Bond") with a penal sum of $1,807,450.00 on behalf of B5 and Chris J. and Shelley Brown as principals. EMC issued the Bond to B5 to cover B5's construction work performed on the United States Border Patrol Station ("Project") located in Comstock, Texas. The general contractor on the Project was Gilbane Construction ("Gilbane"). On March 25, 2013, Gilbane hired B5 as a subcontractor. B5 was to perform "Earthwork and Site Utilities" at a contract price of $1,843,950.00[1] (Doc. 62-1 at 2). Defendants began work in May 2013.

On October 8, 2012 as a condition for the issuance of the Bond, EMC required that B5 execute a General Application and Agreement of Indemnity ("GAI"). Defendants Chris J. and Shelley Brown each signed the agreement. The parties do not dispute that they "entered into an Indemnity Agreement, the terms of which speak for themselves." (Doc. 28 at 3). Section twenty seven of the GAI sets forth a choice of law clause providing that the GAI "shall be construed and interpreted in accordance with the laws of the State of Iowa." (Doc. 1 at 25). As neither party has cited the Court to Iowa law in the briefing, the Court deems the choice of law clause to have been waived for purposes of this dispositive motion. The relevant contractual provisions in the GAI are sections two, three, and eleven.

From March 2013 until January 23, 2014, B5 submitted to Gilbane twelve Application and Certificate for Payment forms for work completed on the Project. All of B5's pay applications were approved by both Gilbane and the United States Army Corps of Engineers. The history of B5's work completed and billings submitted on the Project reflect that B5 substantially completed the work for which it was hired. The final submission indicates that Gilbane's last payment to Defendants, once Defendants completed their work, would be $126,209.56, which included $102,209.56 retainage.

---

[1] By the time the January 23, 2014 Application and Certificate for Payment was filed, the total contract sum had been increased by change orders with a combined value of $225,241.59. The total contract sum became $2,045,191.59.

- 3 -

On March 20, 2014, Defendants demobilized from the Project. Defendants were unable to complete their work without Gilbane's installation of curbs and gutters on the Project. Specifically, B5 was unable to finish grading the Project's driveway with crushed rock and install stormwater protection prevention due to Gilbane's failure to install curbs and gutters. A June 18, 2014 Termination for Default letter reflects that Gilbane sent B5 a written notice requesting deficiencies be cured on March 21, 2014 and April 9, 2014. Though Gilbane mailed the notices to an incorrect B5 address, Defendants eventually received both written notices. B5 nevertheless maintains that it was unable to complete its work, despite its delivery of all materials to the site, due to Gilbane's lack of performance on the Project under the terms of the contract.

Beginning in April 2014, EMC received claims against the Bond from parties who had and who had not subcontracted with B5 on the Project. EMC paid losses and expenses totaling $1,154,069.95 under the Bond. B5 disputes the losses and expenses EMC paid as being outside the scope of contracted work B5 had agreed to complete for the Project. B5 further asserts that it was not in default or breach of the Gilbane contract due to lack of proper notice, impossibility of performance, and financial impracticability. B5 states that its work on the Project was substantially completed, paid for, and approved by Gilbane when EMC started paying claims against the Bond. B5 further states that Chris Brown notified EMC of these facts in April 2014.

### III.  LEGAL STANDARDS

**1. Summary Judgment**

Summary judgment is appropriate if the evidence, when reviewed in a light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material in a case and "only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable

jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.,* 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

Because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . [t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. *Anderson,* 477 U.S. at 255 (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158-59 (1970)); *Harris v. Itzhaki,* 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of intent, should be left to the jury.") (citations omitted).

When moving for summary judgment, the burden of proof initially rests with the moving party to present the basis for his motion and to identify those portions of the record and affidavits that he believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). If the movant fails to carry his initial burden of production, the non-movant need not produce anything further. The motion for summary judgment would then fail. However, if the movant meets his initial burden of production, then the burden shifts to the non-moving party to show that a genuine issue of material fact exists and that the movant is not entitled to judgment as a matter of law. *Anderson,* 477 U.S. at 248, 250; *Triton Energy Corp. v. Square D. Co.,* 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in his favor. *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968). However, he must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v.Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (internal citation and emphasis omitted); *see* Fed. R. Civ. P. 56(c)(1).

Finally, conclusory allegations unsupported by factual material are insufficient to defeat a motion for summary judgment. *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989); s*ee also Soremekun v. Thrifty Payless, Inc.,* 502 F.3d 978, 984 (9th Cir. 2007) ("[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment"). Nor can such allegations be the basis for a motion for summary judgment.

### 2.  Implied Covenant of Good Faith and Fair Dealing

Every contract in Arizona has an implied covenant of good faith and fair dealing. *Rawlings v. Apodaca,* 726 P.2d 565, 569 (Ariz. 1986). "The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Id*. Moreover, "[t]he law of good faith, though inexact, attempts a remedy" in instances "where one party exercises discretion retained or unforeclosed under a contract in such a way as to deny the other a reasonably expected benefit of the bargain." *Savings. & Loan Ass'n v. SunAmp Sys., Inc.*, 838 P.2d 1314, 1319 (Ariz. Ct. App. 1992).

The Arizona Supreme Court has explicitly held that the duty to act in good faith applies to sureties. *Dodge v. Fidelity & Deposit Co.*, 778 P.2d 1240, 1243 (Ariz. 1989). A surety is entitled to indemnification for all money actually paid under the contract, unless the indemnitor can prove that such payments were not made in good faith. *J. D. Halstead Lumber Co. v. Hartford Acc. & Indem. Co.*, 298 P. 925, 928 (Ariz. 1931) ("If the money was actually paid, the only way in which it can be attacked by the indemnitor is through a plea and proof of bad faith in the payment."). Further, the Arizona Court of Appeals has instructed that a party cannot "use[] its discretion for a reason outside the contemplated range—a reason beyond the risks assumed by the party claiming a breach." *SunAmp Sys.*, 838 P.2d at 1319-20 (quoting Steven J. Burton, *Breach of Contract and the Common Law Duty to Perform in Good Faith,* 94 Harv. L. Rev. 369, 385-86 (1980)). Therefore, a surety may breach the implied covenant "by exercising express discretion in a way inconsistent with a party's reasonable expectations and by acting in ways not

- 6 -

expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain." *Bike Fashion Corp.*, 46 P.3d at 435 (citing *Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 30 (Ariz. 2002)).

### 3. Specific Performance

For an order of specific performance to be granted, the following requirements must be met: (1) there must be a contract; (2) the terms of that contract must be certain and fair; (3) the party seeking specific performance must not have acted inequitably; (4) specific enforcement must not inflict hardship on the other party or public that outweighs the anticipated benefit to the party seeking specific performance; and (5) there must be no adequate remedy at law. *How v. Fulkerson*, 528 P.2d 853, 855 (Ariz. Ct. App. 1975). The Arizona Supreme Court has held that "[t]he inability to ascertain the scope of liability provides another reason why the legal remedy of monetary damages is not adequate." *Power P.E.O., Inc. v. Employees Ins. Of Wausau*, 38 P.3d 1224, 1227 (Ariz. 2002) (citing *Milwaukie Constr. Co. v. Glens Falls Ins. Co.,* 367 F.2d 964, 966 (9th Cir.1966) (holding that in cases where a surety "knew it was going to have liability claims filed against it, but did not know the amount of those claims, the legal remedy of money damages would not be adequate.")).

## IV.  DISCUSSION

In support of its Statement of Facts, Plaintiff submits the Declaration of Ryan Springer, claims attorney for EMC. Attached to the Declaration of Mr. Springer is a spreadsheet reflecting a list of claimants and "amount EMC paid" or "paid expenses." (Doc. 47 at 4-5). There are no supporting invoices or bills, no dates of service, and no documentation which relate the amounts paid by EMC to the Project. Nor is there any description of the nature and scope of the work performed by the listed claimants which led EMC to pay the claimants under Bond No. S374509. Mr. Springer simply asserts that EMC paid the amounts and expenses "under the good faith belief that they were either necessary or expedient." (Doc. 47 at 2).

Assuming as true that the minimalist Declaration of Mr. Springer is sufficient proof that EMC paid claims and expenses of $1,154,069.95 related to the Project under the Bond due to B5's actions or inactions, then the issue next presented to the Court is whether genuine issues of material fact exist regarding whether EMC breached the implied covenant of good faith and fair dealing inherent in the GAI by paying the sums listed.

In support of its Response to Plaintiff's Motion for Partial Summary Judgment, Defendants submit the Declaration of Chris J. Brown, President of B5.  Like Mr. Springer, Mr. Brown bases his affidavit on personal knowledge and belief.  Attached to the Declaration of Mr. Brown are numerous documents reflecting:  B5's subcontract with Gilbane and the summary of work B5 was contracted to perform; the time schedule for the work; the Schedule of Values and price of the work charged; the Application and Certificate for Payment forms submitted for work performed on the Project by B5; Gilbane's Conditional Waiver and Release forms executed for progress payments made over the course of the work B5 performed; Gilbane's termination letter of June 18, 2014; and images of checks paid by EMC to various entities from April 2014 through October 2014.  Mr. Brown alleges that he notified EMC in April 2014 of B5's substantial completion of all contracted work for Gilbane.  Mr. Brown further asserts that he informed EMC that the materials for the remaining approved $24,000 of grading work had been delivered to the site.  Mr. Brown states that EMC knew all the information set forth in Mr. Brown's Declaration at the time it paid claims on the Bond.  Such information includes Gilbane's failure timely to complete curbs and gutters, rendering further performance by B5 impossible and/or financially impracticable under the Project contract.

Considering all the evidence presented in a light most favorable to the Defendants and drawing all justifiable inferences in their favor, the Court finds that Defendants have raised genuine issues of material fact regarding whether EMC breached the covenant of good faith and fair dealing by paying the sum of $1,154,069.95 under the Bond.  The

Court must consider the affidavit of an individual with personal knowledge who sets forth facts which are material and probative to the issues pending before it even if the affidavit is self-serving. *United States v. Shumway*, 199 F.3d 1093, 1103 (9th Cir. 1999); *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) ("an affidavit that is self-serving bears on its credibility, not on its cognizability"). The Court cannot conclude as a matter of law that EMC's actions in this case reasonably would have fallen within the contemplation of B5. A genuine issue of material fact exists as to whether EMC exercised its discretion in a way consistent with B5's reasonable expectations. Whether EMC's actions in this case were objectively reasonable under the circumstances is a question of fact. Whether EMC reasonably investigated claims it paid and treated Defendants' positions taken reasonably under the circumstances are questions of fact. *See Dodge v. Fidelity Deposit Co.*, 778 P.2d 1240 (Ariz. 1989). EMC therefore is not entitled to judgment as a matter of law regarding Count I.

With regard to Count III, the Court finds that genuine issues of material fact exist as to whether Plaintiff acted inequitably in this case. Further, the Court finds that an adequate remedy at law may well exist. If an adequate remedy at law exists, the Court need not fashion an equitable remedy. If the full value of all alleged claims has been paid by EMC under the Bond, EMC may seek a monetary judgment under the indemnification agreement and has no basis for requesting specific performance of the collateral security provision. *Compare Power P.E.O., Inc. v. Emps. Ins. of Wausau*, 38 P.3d at 1228-29 ("[W]hen 'liability had not yet been determined but claims were expected, the surety had no legal remedy under that provision for an indemnification award, but it did have an equitable remedy for specific performance of the collateral security provision.'") (quoting *U.S. Fid. & Guar. Co. v. J. United Elec. Contracting Corp.*, 62 F. Supp. 2d 915, 923 (E.D.N.Y. 1999)). As an adequate remedy at law may exist for indemnification and genuine issues of material fact exist as to whether the Plaintiff has acted inequitably in this case, EMC has failed to prove that it is entitled to judgment as a matter of law on Count III.

## V.  CONCLUSION

For all of the reasons set forth herein,

**IT IS ORDERED** denying Plaintiff's Motion for Partial Summary Judgment (Doc. 45).

Dated this 20th day of November, 2015.

*/s/ Eileen S. Willett*
Eileen S. Willett
United States Magistrate Judge